126 Pa. Commonwealth Ct. 537 (1989)
560 A.2d 303
MIDLAND BOROUGH SCHOOL DISTRICT
v.
COMMONWEALTH of Pennsylvania, PENNSYLVANIA LABOR RELATIONS BOARD.
Appeal of MIDLAND EDUCATION ASSOCIATION, PSEA/NEA.
COMMONWEALTH of Pennsylvania, PENNSYLVANIA LABOR RELATIONS BOARD, Appellant,
v.
MIDLAND BOROUGH SCHOOL DISTRICT, Appellee.
Commonwealth Court of Pennsylvania.
Argued May 4, 1989.
Decided June 21, 1989.
*538 Richard E. Davis, Sol., Midland, for appellee, Midland Borough School Dist.
James L. Crawford, Lisa K. Essman, Harrisburg, for appellant/appellee, Labor Relations Bd.
William J. Maikovich, New Brighton, for appellant, Midland Educ. Ass'n.
Before CRAIG and DOYLE, JJ., and KALISH, Senior Judge.
CRAIG, Judge.
When a school district resolves to send ("tuition out") all of its students in grades 7-12 to a neighboring school district for their public education, is that action subject to collective bargaining with the teachers' union under section 701 of the Public Employee Relations Act (PERA),[1] or is it a matter of inherent managerial policy under section 702,[2] subject only to meet-and-discuss procedures?
In agreement with the decision of the Pennsylvania Labor Relations Board (PLRB) that such an action is equivalent to contracting out bargaining unit work and is therefore a subject for collective bargaining, this court reverses the decision of the Court of Common Pleas of Beaver County which set aside the PLRB's final order.
The PLRB had dismissed exceptions to the hearing examiner's decision and adopted his conclusion that the district had committed unfair labor practices in violation of PERA section 1201(a)(1), (5), 43 P.S. §§ 1101.1201(a)(1), (5), and that the district must rescind the tuitioning-out agreement, reinstate the work of the bargaining unit, and reinstate furloughed teachers with backpay.
*539 The factual foundation of this case resides in the PLRB's findings, which are determinative where supported by substantial evidence, as they are here. Judicial judgment is not substituted for the expertise of the PLRB. Cumberland Valley School District Appeal, 483 Pa. 134, 394 A.2d 946 (1978). Although the trial court articulated its own findings "[f]rom a review of the Record," the proper source of the essentially undisputed facts is the PLRB's findings, here derived from the hearing examiner's proposed decision, adopted by the PLRB.
According to those findings, severe economic distress in Midland Borough began in 1982, with the cutback and ultimate closing of the steel company which was the major local employer. The appellee, the Midland Borough School District, asked the Midland Education Association, the teachers' union which is the appellant here, to reopen the collective bargaining agreement and accept a wage freeze. In 1984, the new school district superintendent faced $900,000 of unpaid debts, and severe financial problems remained in 1986.
After declining to give the union specific financial information with respect to the alternative of tuitioning out students, the district's directors, on April 9, 1986, adopted a resolution to send its students in grades 7-12 on a tuition basis to the neighboring Beaver Area School District. The terms of the agreement are that it extends for five years, through the 1990-1991 school year. The union, which became aware of the resolution only when it was passed, demanded collective bargaining on the issue, along with rescission of the resolution. In April and May, the district directors concluded a contract with Beaver and furloughed thirteen Midland teachers.
The discussion portion of the decision, as adopted by the PLRB, noted that the district has not abolished the school system, nor has it merged or consolidated with another district. Instead it has turned its junior and high school students over to another district for a limited period, five years. Thus, the PLRB held, the case did not involve the *540 permanent cessation of a service, held to be allowable without bargaining in Pennsylvania Labor Relations Board v. Millcreek Township School District, 7 PPER 91 (1976), which involved discontinuance of transportation.
The PLRB decision, as adopted, pointed out that the employer has not departed from the enterprise of junior and senior high school education but has transferred bargaining unit work without collective bargaining. Such a unilateral transfer is unlawful, even when the transfer is to unpaid volunteers. Pennsylvania Labor Relations Board v. Mars Area School District, 480 Pa. 295, 389 A.2d 1073 (1978). Continuing to provide a service, by paying an independent contractor to perform it, is an unfair practice when pursued without previous bargaining. Minersville Area School District v. Pennsylvania Labor Relations Board, 82 Pa.Commonwealth Ct. 506, 475 A.2d 962 (1984) (cafeteria services).
As stated in the hearing officer's Finding No. 9, adopted by the PLRB, the discussion sessions between district and union before the agreement were perfunctory and did not deal with the tuitioning-out issue, as was confirmed by the district's refusal to put financial information concerning that issue on the table.
The trial judge relied upon Pennsylvania Social Services Union v. Pennsylvania Labor Relations Board, 503 Pa. 236, 469 A.2d 150 (1983), for the proposition that issues vitally affecting a system should be regarded as matters of inherent managerial policy. That case involved social workers' caseload size, held by the Supreme Court to have a vital impact upon the policy of the system and therefore to be a matter of managerial prerogative.
The trial judge stressed that the economic problems were linked with educational problems because of the declining enrollment, deficient physical plant and "a devastated school tax base." He considered the district as having approached "its monumental problem carefully and conscientiously." He noted that the district consulted the state's Department of Education and tried alternative policies between 1984 and 1986. However, we must agree with the *541 PLRB that the district also had a duty to consult and bargain with its own teachers. By not doing so, it certainly failed to pursue all of the available alternatives.
As against the trial judge's view that educational policy, and not just economic problems, were involved, we have the PLRB's statement  in effect a finding  that:
Although the District took into account certain educational considerations, the decision to contract was essentially an economic one. The Examiner correctly characterized the record that economic considerations were the "overwhelming motivation" behind the decision.
There has been an unflagging consistency in judicial approval of the PLRB's view that unilateral removal of work from a bargaining unit and transfer of that work to others for economic reasons, without collective bargaining, is an unfair labor practice. In addition to the cases cited above, there are Borough of Wilkinsburg v. Sanitation Department, 463 Pa. 521, 345 A.2d 641 (1975) (bargaining as to transfer of refuse collection to independent contractor); and City of Clairton v. Pennsylvania Labor Relations Board, 107 Pa.Commonwealth Ct. 561, 528 A.2d 1048 (1987) (police dispatchers replaced by fire personnel without bargaining).
The district contends that the bargaining unit remained "intact," but that contention is impossible to accept in face of the fact that junior and senior high school education, and a goodly portion of the faculty associated with it, were dropped.
In somewhat contrary vein, the district also contends, despite the five-year limitation of the agreement with Beaver Area, that the plan is permanent because it would be "financially impossible" to reopen the junior and senior high schools, so that only the elementary building would remain for the housing of all programs. These contentions constitute only speculation with respect to the possible future permanence of the contracting out, but the above-quoted modifier underscores the essentially economic nature of the present background to the district's action.
*542 Accordingly, the decision of the trial court must be reversed, so that the PLRB's decision and its accompanying remedies are reinstated into effect.[3]

ORDER

(Nos. 3062 and 31 C.D.1988)
NOW, June 21, 1989, the order of the Court of Common Pleas of Beaver County, at No. 192 of 1988, dated December 2, 1988, is reversed.
NOTES
[1] Act of July 23, 1970, P.L. 563, as amended, 43 P.S. § 1101.701.
[2] 43 P.S. § 1101.702.
[3] We note that our decision here is consistent with the substantive premise of our earlier decision in Midland Education Association v. Midland School District, 116 Pa.Commonwealth Ct. 191, 541 A.2d 428 (1988), in which we affirmed a common pleas court decision involving an arbitrator's award which treated the transfer to the Beaver district as a bargainable matter in the context of grievance arbitration.